### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| LOCAL 705, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL-CIO, and RICHARD RUCKER, | ) ) ) ) |
| Petitioners, | ) ) |
| vs. | ) ) |
| UNITED STATES DEPARTMENT OF LABOR, | ) ) |
| Respondent. | ) ) |

**DOCKETED**

**AUG 0 8 2003**

**03C 5480**

**JUDGE KOCORAS**

MAGISTRATE JUDGE SCHENKIER

FILED 8-05

03 AUG -7 PM 12: 47

CLERK
U.S. DISTRICT COURT

### PETITION FOR EXEMPTION FROM 29 U.S.C. §504 (a) BAR
### AGAINST HIRING RICHARD RUCKER

Petitioners Local 705, International Brotherhood of Teamsters, AFL-CIO ("the Union"), and Richard Rucker seek permission from this Court allowing the Union to hire Richard Rucker as a Union Organizer, notwithstanding his conviction of violating narcotics laws, as permitted by 29 U.S.C. § 504 (a). In support of this Petition, Petitioners state:

1. The Union is a labor organization which represents approximately 20,000 members employed in the trucking and related industries in the Chicago metropolitan area. One of the Union's key objectives is organizing, and the Union maintains an organizing department whose staff regularly files petitions with the National Labor Relations Board seeking representation elections among unorganized groups of employees

2. Richard Rucker is a Chicago resident who became involved in criminal problems related to the use of narcotics. In November 2002, Mr. Rucker was convicted of possession of a controlled substance in violation of Illinois criminal

1

law (Ch. 720/570, §401 (d) and § 407(b)(2)). He was sentenced to time served (April to November 2002) and twenty-four months of probation.

3. Prior to his drug-related criminal problems, Richard Rucker had been an active Union member and a Union steward. He assisted in Union organizing drives on several occasions. Because of his rapport with members and employees and his success in Union organizing, he came to the attention of the Union's principal officer, Gerald Zero. The Union is seeking to hire an additional Union organizer (to assist the Union's chief organizer) and, because of Mr. Rucker's successes and experiences in Union organizing, the Union would like to hire him.

4. Since his release, Mr. Rucker completed a drug treatment program and attended an educational training program for Union organizers. Mr. Rucker has been (and is now) drug free and is completing successfully all aspects of his probation.

5. Section 504 (a) of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 504 (a), bars labor organizations from employing individuals convicted of "violation of narcotics laws" unless permission is granted by a Federal Court.

6. The Union is seeking permission to hire Mr. Rucker to assist in Union organizing because it believes that Mr. Rucker has the ability and experience to perform well as a Union organizer, Mr. Rucker will be closely supervised by the Union's organizing director and will not have access to the Union's treasury, and the Union believes that Mr. Rucker's narcotics conviction ought not to be an impediment to employment in this capacity.

7. Pursuant to 29 U.S.C. § 504 (a), notice of this proceeding has been given

2

to the U.S. Department of Labor, to the Circuit Court of Cook County, and to the Cook County State's Attorney.

8. This petition is supported by the attached affidavits of:

    (a)    The Union's principal officer Gerald Zero;

    (b)    Richard Rucker;

    (c)    Treatment Alternatives for Safe Communities ("TASC"), the drug treatment referral program which Mr. Rucker completed;

    (d)    The director of the AFL-CIO's Organizing Institute which conducted a training program attended by Mr. Rucker; and

    (e)    Honorable Danny Davis.

For these reasons, Teamsters Local 705 and Richard Rucker request the Court to grant permission for Richard Rucker to be employed by Teamsters Local 705 as an organizer despite his narcotics conviction.

                        Respectfully submitted,

                        Peggy A. Hillman
                        445 North Pennsylvania Ave., Suite 401
                        Indianapolis, IN 46204
                        (317) 637-2345

                        Michael H. Slutsky
                        N. Elizabeth Reynolds
                        Allison, Slutsky & Kennedy, P. C.
                        208 South LaSalle St., Suite 1880
                        Chicago, IL 60604
                        (312) 364-9400

August 6, 2003             By _____
                        Attorneys for Petitioners

A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOCAL 705, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL-CIO, and RICHARD RUCKER, | ) ) ) ) |
| Petitioners, | ) ) |
| vs. | ) ) |
| UNITED STATES DEPARTMENT OF LABOR, | ) ) |
| Respondent. | ) |

## DECLARATION OF GERALD ZERO

I, Gerald Zero, say and declare as follows:

1. I make the following statements based upon my own personal knowledge and, if called upon to do so, could and would competently testify thereto under oath.

2. I am the Principal Executive Officer and Secretary-Treasurer of Teamsters Local 705; I was elected to this position in 1995 and was reelected in 1997 and 2000. Teamsters Local 705 is a labor organization which represents approximately 20,000 members employed in the trucking and related industries in the Chicago metropolitan area. Teamsters Local 705 maintains its principal offices at 1645 West Jackson Blvd., Chicago, Illinois 60612.

3. In 1993, Teamsters Local 705 was placed in trusteeship because of the wrongdoing and embezzlement of the prior leadership (see IBT vs. Local 705, 827 F. Supp. 513 (N.D.Ill. 1993)). I was appointed Trustee of Local 705 with a mandate to reform the Union. Among the many problems which confronted the new leadership of Local 705 was the proliferation of part-time, low wage jobs in the

1

trucking industry, mainly in the job classifications of loader, sorter and other unskilled, non-driving positions. Many of these jobs are held by minorities, African-Americans, and Hispanics. The prior leadership of Local 705 (before the trusteeship) did not attempt to organize these workers who, in my opinion, were and are greatly in need of union representation.

4. Among other reforms instituted at Local 705 during the trusteeship was the establishment of an organizing department within Local 705. Our organizing department is headed by a full-time Union Representative, Mr. Paul DiGrazia. Mr. DiGrazia is assisted by groups of volunteers comprised of Union members and retirees who volunteer to help out in organizing drives. On occasion, Union stewards also assist in their off hours.

5. Organizing has become a high priority for Local 705. Although Paul DiGrazia has been quite successful, we have become convinced of the need for additional staff, another full-time organizer, who has particular rapport with those groups, minorities and low-wage part-timers, in need of union representation. The additional union organizer will be supervised by Paul DiGrazia in all respects.

6. I became acquainted with Richard Rucker in the late 1990's when he was employed by United Parcel Service as a part-time employee at the Jefferson Street downtown UPS facility. I first noticed Richard Rucker during the 1997 strike against UPS. One of the objectives of that strike was to demand that UPS create more full-time jobs to replace the part-time jobs held by many employees. Richard Rucker was appointed to be a picket captain during the strike. I noticed that he was a natural leader; he was able to communicate with the UPS part-

2

timers; he was articulate. He maintained good order on the picket line. The strike ended after 18 days with UPS's commitment to create more full-time jobs.

7.  After the 1997 UPS strike, I appointed Richard Rucker to be a Union steward to represent part-time employees at UPS. He did a good job as a Union steward, representing members who had grievances. I recall that he was one of the Union stewards who volunteered to assist in Union organizing. He was particularly effective in organizing the workers employed at the rail yards in Chicago, many of whom are minority and Hispanic. Richard Rucker was able to communicate with them easily and effectively. The drive to organize the rail yards was one of the Local 705's big successes, and the entire industry, numerous employers, are now under Union contract.

8.  I know that Richard Rucker had some problems with drugs. I believe that his drug problem was part of the reason he lost his job at UPS. Richard Rucker has kept in touch with me and approached me in 2003 after he was released from jail. He has always been up front with me, and he told me about his felony conviction. He has told me that he is through with drugs, and I believe him. I believe that he is entitled to a chance to do a much needed job for the Union. I strongly believe in the need for ex-offenders to have access to jobs.

9.  Richard Rucker attended a three day training session for Union organizers in April 2003. He received a superlative report on his performance. The assessment (attached as an exhibit) says that he "brought energy and enthusiasm to the training" and that he has "natural skills" for organizing. This assessment confirms my own personal observations of Richard Rucker: he is a natural communicator, a great spokesman, with good rapport and

3

understanding of workers' rights and needs.

10. If Local 705 is allowed to employ Richard Rucker, I do not intend to give him free reign or a blank check. He would be closely supervised by Paul DiGrazia. He would not be given a Union credit card or any authorization to write checks or have access to the Union's treasury.


_____
Gerald Zero

August 5, 2003

4

## AFL-CIO ORGANIZING INSTITUTE
## THREE DAY TRAINING PARTICIPANT ASSESSMENT

NAME: Richard Rucker                    DATE OF THREE DAY: April 11-13, 2003

CURRENT STATUS: IBT Sponsored           AVAILABILITY DATE:

SECOND LANGUAGE:

*We use the following scale for rating applicants on the criteria: 1=significant ability; 2= some ability; 3=little ability; NR= not rated because not covered or observed. Please write comments on the lines provided or in the margins.*

**Key Criteria for Field Training:**

|  | 1 | 2 | 3 |
|---|---|---|---|
| Good presence and rapport with workers: | ☑ | ☐ | ☐ |
| Ability to actively listen and ask relevant questions: | ☑ − | ☐ | ☐ |
| Develops clear vision of the union: | ☑ − | ☐ | ☐ |
| Ability to follow housecall agenda and control conversation: | ☐ +☑ | ☑ | ☐ |
| Ability to agitate worker using worker's issues: | ☑ − | ☐ | ☐ |

**Motivation:**

|  | 1 | 2 | 3 |
|---|---|---|---|
| Communicated enthusiasm for the work of union organizing: | ☑ | ☐ | ☐ |
| Demonstrated a commitment to social/economic justice: | ☑ | ☐ | ☐ |

**Ability to Learn:**

|  | 1 | 2 | 3 |
|---|---|---|---|
| Evaluates own work and seeks to improve: | ☑ | ☐ | ☐ |
| Showed improvement throughout training: | ☑ | ☐ | ☐ |
| Takes feedback well: | ☑ | ☐ | ☐ |

**Overall Assessment:**

Richard brought energy and enthusiasm to the training. He did well in role plays and participated well in every discussions. He has good communication skills but needs a little polish. Spending time doing hitvisits with experienced organizers would benefit his development. Overall really good participant - confident - motivated

**Suggestions for Training:**

Get involved in IBT organizing drives and develop natural skills further. Get regular feedback from experienced organizers.

**Other Considerations:**

Overall = 1

**B**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LOCAL 705, INTERNATIONAL )
BROTHERHOOD OF TEAMSTERS, AFL-CIO, )
and RICHARD RUCKER, )
                                )
                Petitioners, )
    vs. )
                                  )
UNITED STATES DEPARTMENT OF LABOR, )
                                  )
                Respondent. )

## DECLARATION OF RICHARD RUCKER

I, Richard Rucker, say and declare as follows:

1. I make the following statements based upon my own personal knowledge and, if called upon to do so, could and would competently testify thereto under oath.

2. I reside at 2701 South Indiana Street, Apt. 2006, Chicago, IL 60616. My date of birth is May 15, 1967. I am 36 years old. I am African-American. I am 6 feet, 6 inches tall. I was born and raised in Chicago. I attended Austin and Sullivan High Schools. I played football at Sullivan High School. I am now in the process of obtaining my GED certificate. I have been married to Sandra Burl for thirteen years (since 1990). We have one child, a boy age 13.

3. I became active in the Union as part of my job at United Parcel Service's downtown Jefferson Street facility where I worked in a series of part-time job classifications. I got involved in the 1997 strike against UPS, in part because I was one of the part-timers who were the reason for the strike. I met Gerald Zero, Local 705's Secretary-Treasurer, during the strike. After the strike was over, I

1

became a Union steward. I represented many of my fellow employees in prosecuting their grievances. I also volunteered to assist in Union organizing drives. I learned that I could talk to other workers to persuade them to vote for the Union. I felt that this was the wave of the future, and I believe I was good at the tasks involved.

4. I got involved in using drugs in the 90's. My need for drugs caused me to hustle merchandise and other goods. This was part of the reason why I lost my job at UPS in 1999. After that, I was unable to get another job and started hustling drugs. I was arrested in July 2001 for drug delivery and was given probation. Then, in February 2002, I was arrested again and spent several months in Cook County Jail. I was released in November 2002. I am now serving two years probation. Copies of my criminal conviction orders are attached.

5. After my release in November 2002, I successfully completed a drug treatment program arranged through TASC (Treatment Alternatives for Safer Communities). I am now drug free. I have rejected the drug scene. I have had two years of hell. I will continue to be tested for drug use throughout my probation. I am not going to relapse into using drugs.

6. After my release in November 2002, I returned to my wife and son. My wife has been there for me throughout these bad times. She has worked for the same company since 1984, and is currently supporting our family.

7. After my release in November 2002, I visited the Union's offices and talked to Gerald Zero about my future. I attended the Union organizing institute in April 2003 and received a good report. I know that I would do well as a Union organizer, because I am able to communicate well with workers. I have

2

expierienced the problems confronted by low wage minority workers, and I am committed to advancing their interests. I am very grateful that Gerald Zero and the Union staff are supporting me and want to work with me even though I have a criminal record. I believe that the job of Union organizer will give me a chance to prove myself, to prove that I can communicate well with others and I can use those abilities in a productive way.

Richard Rucker

August 5, 2003

3

C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LOCAL 705, INTERNATIONAL )
BROTHERHOOD OF TEAMSTERS, AFL-CIO, and )
RICHARD RUCKER, )
          Petitioners, )
    vs. )
     )
UNITED STATES DEPARTMENT OF LABOR, )
     )
          Respondent )

## DECLARATION OF ANGELA BOYD-WILLIAMS and DEZIRE GORDON ON BEHALF OF TASC, INC.

Angela Boyd-Williams and Dezire Gordon declare as follows:

1. Angela Boyd-Williams and Dezire Gordon are employed by TASC, Inc. TASC is a not-for-profit corporation licensed by the Illinois Department of Human Services, Office of Alcoholism and Substance Abuse, to provide clinical substance abuse assessment and treatment referral services to the Illinois court system as described in 77 Ill. Admin. Code 2060.507 and 20 ILCS 301/40-5 et. al. A full description of the adult criminal justice services provided by TASC is attached hereto.

2. Angela Boyd-Williams is a Clinical Supervisor for TASC's Cook County adult criminal justice services; she oversees all clinical services provided by a staff of three case managers with caseloads of approximately 85 each. At the time of Richard Rucker's TASC involvement, she was the Clinical Supervisor overseeing his case.

3. Dezire Gordon is the Administrator for all Cook County services provided by TASC. She has a Masters Degree in Health Psychology. She is responsible for the administrative oversight of all clinical assessment and case management services

1

provided by TASC to the Cook County criminal justice system. She oversees a staff of 41, among them Angela-Boyd Williams.

4. TASC interacts with the Cook County criminal justice system in the following way:

a. Pre-judgment defendants who manifest possible drug use are referred to TASC by criminal court judges, state's attorneys and/or the defendant's attorney.

b. TASC completes a comprehensive clinical assessment of the defendant, focusing on the nature and extent of his/her drug use, the relationship between drug use and criminal activity, and the likelihood for his/her rehabilitation through treatment. TASC then submits its recommendation to the referring judge as to whether or not probation with treatment is an appropriate alternative for a given defendant.

c. Upon approval by the Court, a defendant is sentenced to probation with treatment supervised by TASC. TASC then determines the appropriate treatment program for the defendant, refers the defendant to that program, supervises the defendant's progress at the treatment program, and reports on that progress regularly to probation and the referring judge.

d. At the conclusion of the treatment program, TASC evaluates the probationer's progress in the overall treatment plan. These evaluations, called terminations, are categorized as unsuccessful, neutral or successful. To be terminated successfully, a defendant must meet *all* of the following criteria: fulfillment of all of the terms of the treatment program; demonstrated legal, stable income; demonstrated stable housing; and abstention from drug use as measured by regular urinalysis.

2

e. Approximately 60 per cent of offenders who are supervised by TASC are terminated either *unsuccessfully* or *neutrally*. Some unsuccessful terminations are by virtue of being arrested for a new case, some because the offender has met some, but not all, of the success criteria. Neutral terminations are those cases where additional circumstances prevent the completion of the overall treatment plan.

5. Richard Rucker was referred to TASC for a clinical assessment by Judge Marjorie Laws in the Circuit Court of Cook County in September of 2002. Mr. Rucker was charged with Delivery of a Controlled Substance. A clinical assessment of Mr. Rucker determined that he met the criteria for opiate dependency and that his criminal behavior was related to his heroin use. As a result of this assessment, TASC recommended to Judge Laws that Mr. Rucker be sentenced to probation with TASC supervision and that Mr. Rucker receive out-patient treatment services, which includes weekly group and individual counseling over a six to eight-week period. Based on this recommendation, Judge Laws sentenced Mr. Rucker to a term of probation with supervision by TASC on November 2, 2002.

6. TASC referred Mr. Rucker to Southeast Alcohol and Drug Abuse Center (SEADAC), located at 8640 S. Chicago Ave. Mr. Rucker began receiving services by SEADAC on November 13, 2002. SEADAC's program included a 1.5 hour assessment, individual and group counseling sessions, and urinalysis monitoring. SEADAC's program requires offenders to successfully complete 75 hours of counseling services followed by 22 hours of aftercare.

7. On January 15, 2003, the TASC case manager for Mr. Rucker's case, supervised by Angela Boyd-Williams, determined that Mr. Rucker had completed the

terms of his SEADAC treatment plan. On February 20, 2003, TASC concluded that Mr.

Rucker had satisfactorily met all of the criteria for successful termination from TASC,

and TASC sent a letter to Judge Laws advising her of Mr. Rucker's successful

termination.

8. Mr. Rucker was exceptional in his completion of the TASC program. He

completed the entire treatment plan and demonstrated all of the success criteria in four

months.

9. TASC is supporting this petition for an exemption from 29 U.S.C. § 504

because of the importance of access to employment by ex-offenders, including Mr.

Rucker.

a. Research indicates that offenders with access to gainful employment may be

three times less likely to become recidivists than those without employment. National

research on the type of offenders served by TASC demonstrates that, without access to

treatment, housing and jobs, over two-thirds will be rearrested within three years.

b. Lack of access to jobs is one of the most pervasive barriers to successful

reintegration of offenders. As part of the trend of increased penalization of drug law

violators, many states and the federal government enacted laws that prohibit ex-

offenders, and in particular ex-drug offenders, from obtaining jobs in specific fields even

if their *prior* drug use and *prior* criminal activity have no bearing on their ability to

perform *current* job functions. In Illinois, close to 60 certified and licensed jobs are

unavailable to ex-offenders. In most instances (such as with 29 U.S.C. § 504) drug law

felonies, which may amount to possession of as little as 1 gram of a narcotic, are grouped

4

with more violent crimes such as murder and rape, or job-specific crimes like embezzlement or forgery.

c. TASC is actively involved in efforts to reduce impediments, statutory or otherwise, to employment of rehabilitated offenders. These efforts include supporting legislation to shorten the time before an ex-offender may expunge their criminal records, working closely with ex-offenders to link them with job training and retention support services, and working with potential employers to reduce the stigma associated with drug use.

10. TASC believes that Mr. Rucker should be afforded the opportunity to become employed as a Union organizer at Teamsters Local 705. By successfully completing TASC's treatment program in a very short period, Mr. Rucker has demonstrated his commitment to the recovery and rehabilitation process. Complete success will be enhanced by his gainful employment.

_____     6/26/03
Angela Boyd-Williams         Date
Clinical Supervisor

_____     6-26-03
Dezire Gordon                Date
Cook County Administrator

5



**TASC**
Treatment Alternatives for Safe Communities

# Overview of Case Management
# Services for Adult Offenders

TASC, Inc. is an
independent, not-for-profit
agency that provides clinical
case management and other
services to men, women and
adolescents with a variety of
social and health-related needs.

Administrative Offices
1500 N. Halsted St.
Chicago, IL 60622
tel: (312) 787-0208
fax: (312) 787-9663
**www.illinoistasc.org**

# History and Development

TASC forms crucial links between public systems and community-based services. In collaboration with criminal justice, juvenile justice, child welfare and other public systems, as well as health and social service providers in community settings, TASC manages access to care for under-served populations.

## National Origins of the TASC Model

The TASC model began as a federal initiative in 1972 when the White House Special Action Office for Drug Abuse Prevention, the National Institute on Drug Abuse, and the Law Enforcement Assistance Administration collaborated to fund several experimental programs nationally as a means to interrupt the cycle of drug abuse and criminal activity. TASC programs were designed to provide: assessment of substance abuse problems of court-referred defendants; placement of qualified participants into community-based treatment services as a condition of their probation; and monitoring of clients' progress for the courts. After proven success in the demonstration efforts, other TASC initiatives were developed with local funding. There are now over 200 independent TASC programs across the country, including TASC, Inc. in Illinois, which is the largest and only statewide TASC program in the United States.

## TASC in Illinois

TASC was founded in Cook County as a not-for-profit corporation in 1976, and quickly became established as a means to provide access to substance abuse treatment for large numbers of non-violent substance-abusing offenders being processed by the criminal courts. By 1980, the Illinois Dangerous Drugs Commission (now the Office of Alcoholism and Substance Abuse) contracted with TASC to offer services statewide, and TASC later became the only designated program to provide substance abuse assessments and recommendations for the Illinois court system (77 Illinois Administrative Code 2060.507).

TASC's clinical case management services — including comprehensive assessment, specialized service planning, placement into treatment, and recovery support and monitoring — are available to every circuit court in Illinois. TASC works with a large network of service providers across the state to ensure that individuals receive the services they need for effective recovery and transition into the community.

## Expansion of Services

Given TASC's success in providing case management for court-referred individuals, TASC's services have expanded to reach other populations for whom access to treatment and other services is often difficult. TASC provides specialized case management and other services for post-release offenders, juvenile offenders, youth in transitional living situations, children and addicted parents involved in the child welfare system, DUI offenders, and HIV-affected clients.

TASC's research division and quality improvement teams consistently evaluate client needs and programming effectiveness to ensure that TASC continually implements best clinical practices. In addition, with 25 years' experience in providing direct client services, designing model programs and building effective community partnerships, TASC offers a variety of training and consultation services nationally.

# Case Management Services

TASC clients typically face a host of issues beyond their addiction and criminal justice involvement. They often have layers of problems to confront, including poverty, joblessness, undereducation, lack of supportive family and social structures, lack of transportation and child care, and mental health issues. To respond to these issues, TASC's comprehensive case management services include the following:

## Identification/Assessment

Court-referred defendants undergo a strict screening process before being accepted as TASC clients (for eligibility, acceptability and serviceability criteria see page 4). Most TASC referrals come from judges, probation officers, attorneys or other professionals in the court system. There are several ways in which potential clients are identified. For instance, many crimes are directly related to drug or alcohol abuse, such as drug crimes and crimes committed to obtain money for drugs. The individual may state to his/her attorney or probation officer that he/she has a problem with drugs or alcohol. TASC's in-depth assessment determines the nature and extent of the client's substance abuse problem, and the likelihood for successful recovery. This assessment provides the judiciary with objective information that may suggest or clarify sentencing options.

*Using a standardized system of clinical case management, TASC supports thousands of individuals each year in the difficult process of recovery.*

## Individual Service Planning

TASC develops individualized service plans that match each client's need for treatment with available community-based resources. Given the multiple service needs of most TASC clients, these plans could include provisions for linkage to substance abuse treatment, vocational/educational resources, medical/mental health providers, services that address issues of domestic violence, or other services.

## Court Advocacy

TASC advocates for offenders who are eligible for alternative sentencing and are acceptable for continued involvement with treatment and TASC. Court advocacy provides expert, objective testimony at all stages of criminal justice processing— pretrial, sentencing, and at violation hearings.

## Service Referrals and Placement into Substance Abuse Treatment

Using standardized criteria, TASC determines the client's service needs at the time of the initial assessment and throughout the course of the client's involvement with TASC. In collaboration with its statewide network of treatment providers, TASC schedules intake appointments, shares assessment information with treatment providers as appropriate, transports clients to treatment when necessary, follows up to ensure successful client entry into treatment, and provides ongoing monitoring and client support. TASC also makes referrals to ancillary services such as medical and mental health providers, as well as public benefit programs.

# Case Management Services - cont'd

## Monitoring and Ongoing Case Management

While clients are in treatment, TASC representatives maintain contact with treatment facilities to monitor the client's progress. That progress is routinely reported to the court or other referral agents. As clients' needs change or as clients experience difficulty, TASC may revise the service plan or provide other interventions to support progress toward recovery.

TASC intervention often includes increasing the involvement of the supervising authority and/or referral source in order to maintain the client's levels of motivation, compliance, progress and commitment. Routine reports and ongoing communication allow the criminal justice system and/ or referral source to stay informed of the client's status in treatment. Regular monitoring also allows for prompt reassessment, service plan revision and intervention for any potential problems.

Clients who fail to adhere to TASC or treatment policies are excused from TASC and referred back to the court to face judgment by the criminal justice system. (See jeopardy and discharge criteria on page 6.)

## Urinalysis

The goal of urine testing in TASC programs is to change client behavior and thereby reduce criminal activity. Urinalysis also may be a component of the initial screening to identify potential candidates for TASC services. After the screening process, urinalysis is used to provide baseline information on the nature of clients' drug dependencies, thus facilitating appropriate referrals to treatment services. Finally, urinalysis is used to monitor ongoing abstinence and provide credible and timely information on clients' continued use or abstinence from specific drugs. Urinalysis provides objective information as to compliance with the criminal justice mandate.

## HIV/AIDS Prevention and Intervention Services

Substance-abusing criminal justice clients are often at high risk for HIV infection. TASC conducts HIV/AIDS education for clients and other professionals on an individual and/or group basis. This may include: general education regarding HIV and the transmission of the virus, risk assessment, risk-reduction strategies, pre- and post-test counseling, and one-on-one consultation. Services can be implemented at any phase of involvement in the criminal justice system, such as during pretrial services or during treatment readiness services while awaiting placement.

# TASC Participation Criteria

## Eligibility Criteria

TASC's eligibility criteria are defined by Article 40 of the Illinois Alcoholism and Other Drug Dependency Act (20 ILCS 301/40). The presiding judge, state supervising judicial (probation), supervising parole official, out-of-state supervising authority, or current supervising federal authority may consider the client to be ineligible for TASC services and deny consent for the client to participate if:

- Charges alleging a violent crime are pending;
- The client has two or more prior violent convictions;
- The client shows no signs of current physical and/or emotional substance dependence;
- The client is under 17 years of age;
- The client elected and was admitted to a treatment program on two prior occasions within any consecutive two year period under Article 40;
- The offense charged is a violation of laws that prohibit drug profiteering (e.g. sales delivery, manufacture, possession "with intent," and conspiracy). There are certain exceptions to this criteria for first time offenders; or,
- The offense charged falls under any other exclusion (such as a DUI offense, a residential burglary with one or more prior felony convictions, another pending felony offense, etc.).

## Acceptability Criteria

TASC uses comprehensive case monitoring criteria to consider a client's acceptability. A client will be considered unacceptable for TASC services if:

- The client does not show signs of physical and/or emotional substance dependence;
- The client's criminal history includes a significant history of physical harm (current offense or two or more prior convictions) or use of a weapon in the commission of crimes;
- The client has two or more prior probation or parole violations or two or more failed treatment or TASC episodes;
- The nature of the crimes does not demonstrate a connection between the client's addiction and his/her criminal activity;
- The client does not comply with TASC intake and contract requirements; or,
- The client does not demonstrate a willingness to take action to remedy his/her situation.

Serviceability

The client's criminal justice status must fall within TASC service capabilities. Barriers such as multiple court locations, outstanding warrants, and out-of-state jurisdiction may render a client unserviceable. The client's medical, psychological, or other presenting problems for which there are no available treatment resources would also indicate unserviceability.

# Jeopardy/Termination Criteria

## Jeopardy System

A major violation of the treatment contract can result in immediate unsuccessful termination of the client. Such violations would include failure to maintain contact with TASC for more than 30 calendar days, or re-arrest for violent behavior or manufacture or delivery of a controlled substance. Other infractions will result in a written warning, called a "jeopardy." A client is unsuccessfully terminated when he/she incurs three jeopardies.

Acts which result in a jeopardy include:
- Use of alcohol or other drugs after admission into treatment;
- Refusal to submit to urinalysis or breathalyzer testing;
- Failure to comply with treatment rules and regulations;
- Failure to comply with the conditions of the individualized service plan;
- Unexcused absence from two consecutive counseling sessions or two scheduled appointments with TASC;
- Hostile or uncooperative behavior towards TASC or treatment personnel; or,
- Re-arrest for a charge other than a crime of violence or manufacture or delivery of a controlled substance.

## TASC Success Criteria

Criteria for successful completion of TASC go beyond those of treatment. All of the following criteria must be met in order for a client to be successfully terminated from TASC:
- The client has satisfactorily completed all treatment requirements per his/her individualized service plan.
- The client has maintained a substance-free status for a minimum of the final four months of TASC services.
- The client has secured a stable living environment upon discharge from all treatment requirements.
- The client has secured a legitimate, stable source of income or has full-time student status.

**D**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LOCAL 705, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS, AFL-CIO, and
RICHARD RUCKER,
               Petitioners,

     Vs.

UNITED STATES DEPARTMENT OF LABOR

           Respondent

DECLARATION OF SAMUEL SMUCKER ON BEHALF OF THE AFL-CIO
ORGANIZING INSTITUTE

I, Samuel Smucker, say and declare as follows:

I make the following statements based upon my own personal knowledge and, if called upon to do so, could and would competently testify thereto under oath.

1.  My name is Samuel J. Smucker and I work at the AFL-CIO's Organizing Institute located at 940 W. Adams, Chicago, IL 60607. My title is Field Training Director. The AFL-CIO is the federation of trade unions in the United States. Unions affiliated with the AFL-CIO have 13 million members. The Organizing Institute is a part of the Organizing Department of the AFL-CIO.

2.  The Organizing Institute evaluates and trains union organizers for the affiliate unions of the AFL-CIO. The primary method by which we train and evaluate potential union organizer is at our three-day trainings. Overall evaluations are done by a panel of current union organizers who act as teaching fellows during the three-day training.

3.  Participants attending the 3-day training are rated a one, two or three. A "one" rating means that the participant is recommended for field training as a union organizer. This means that the teaching fellows felt that the participant showed great potential and that with some training the participant could lead union organizing campaigns in a short amount of time. A "two" rating indicates that the participant shows less potential and is not recommended for development

as a union organizer position although they might accompany an organizer to visit non-union workers. Finally, participants ranked as a "three" are considered unlikely to develop as union organizers and therefore the Organizing Institute makes no recommendation for their further participation in union organizing campaigns.

4. The job a union organizer is to assist workers as they organize themselves into a union. The union organizer is under the direction of the union leadership in regards to work assignment. Typically, union organizers spend their time contacting workers who do not currently have a union by talking with them at their work site or by contacting them at their homes.

5. There are several qualities that make a good union organizer. At the three day training we assess the participants on these categories. These categories include rapport with workers, actively listening to workers, developing a clear vision of the union, and being able to follow an agenda for a conversation and to "agitate", that is, identify problems the worker is having at work and connect solving these problems with organizing the union. A strong motivation to assist workers in building power in their work place is key to doing the work of a union organizer. A high level of pro-union motivation is important because the job of an organizer requires the organizer to work long and irregular hours.

6. Richard Rucker attended an Organizing Institute three-day training in Chicago on the weekend of April 11-13, 2003. He was ranked a "one" by the teaching fellows who worked with him over the weekend. He showed a high level of pro-union motivation and was a capable and natural leader of working people. Mr. Rucker was articulate about how a union functions and was capable of explaining this to a non-union worker. He clearly demonstrated that he is an excellent candidate for the position of union organizer.

_Samuel J. Smucker_                          7-11-3

Samuel J. Smucker                          Date

AFL-CIO Organizing Institute, 940 W. Adams, Chicago, IL 60607

## AFL-CIO ORGANIZING INSTITUTE
## THREE DAY TRAINING PARTICIPANT ASSESSMENT

NAME: Richard Rucker          DATE OF THREE DAY: April 11-13, 2003

CURRENT STATUS: IBT Sponsored          AVAILABILITY DATE:

SECOND LANGUAGE:

*We use the following scale for rating applicants on the criteria: 1=significant ability; 2= some ability; 3=little ability; NR= not rated because not covered or observed. Please write comments on the lines provided or in the margins.*

Key Criteria for Field Training:

|  | 1 | 2 | 3 |
|---|---|---|---|
| Good presence and rapport with workers: | ☑ | ☐ | ☐ |
| Ability to actively listen and ask relevant questions: | ☑ – | ☐ | ☐ |
| Develops clear vision of the union: | ☑ – | ☐ | ☐ |
| Ability to follow housecall agenda and control conversation: | ☐ + | ☑ | ☐ |
| Ability to agitate worker using worker's issues: | ☑ – | ☐ | ☐ |

Motivation:

|  | 1 | 2 | 3 |
|---|---|---|---|
| Communicated enthusiasm for the work of union organizing: | ☑ | ☐ | ☐ |
| Demonstrated a commitment to social/economic justice: | ☑ | ☐ | ☐ |

Ability to Learn:

|  | 1 | 2 | 3 |
|---|---|---|---|
| Evaluates own work and seeks to improve: | ☑ | ☐ | ☐ |
| Showed improvement throughout training: | ☑ | ☐ | ☐ |
| Takes feedback well: | ☑ | ☐ | ☐ |

**Overall Assessment:**

Richard brought energy and enthusiasm to the training. He did well in role plays and participated well in group discussions. He has good communication skills but needs a little polish. Spending time doing housecall visits with experienced organizers would benefit his development. Overall really good participant - confident - motivated

**Suggestions for Training:**

Get involved in IBT organizing drives and develop natural skills further. Get regular feedback from experienced organizers.

**Other Considerations:**          Overall = 1

E

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LOCAL 705, INTERNATIONAL           )
BROTHERHOOD OF TEAMSTERS, AFL-CIO, and   )
RICHARD RUCKER,                    )
                     Petitioners,      )
    vs.                            )
                                )
UNITED STATES DEPARTMENT OF LABOR,   )
                               )
                    Respondent.      )

## DECLARATION OF CONGRESSMAN DANNY K. DAVIS

Congressman Danny K. Davis declares as follows:

1.     My name is Danny Davis. I am the Representative of the 7th Congressional District of Illinois in the U. S. House of Representatives. I took office in 1997 and have been reelected each term since. This District includes most of the West Side of Chicago, and the western suburbs such as Oak Park, River Forest, Maywood, Bellwood, Broadview and parts of Hillside and Forest Park from Lake Michigan to the western edge of Cook County as well as significant portions of the South Side of Chicago as far south as 57th Street. I was the Alderman of the 29th Ward in the City of Chicago for 1979-1990, and I was a member of the Cook County Board of Commissioners from 1990 to 1996.

2.     I am submitting this declaration in support of the Petition of Teamsters Local 705 and Richard Rucker for an exemption from the statutory bar prohibiting a labor union from employing an individual convicted of "violation of narcotics laws" in 29 U. S. C. § 504(a) so that Teamsters Local 705 can hire Richard Rucker as a Union organizer.

- 1 -

3.  One of the problems confronting many of my constituents, and a disproportionate share of African-Americans in our society, is the array of barriers to employment for individuals who have been convicted of narcotics crimes and are now trying to transition back into mainstream society. There has been a trend toward increased penalization of drug law violators returning to society after completing all court order sanctions. This trend, in my judgement, exacerbates the problem of recidivism. Access to gainful employment is the best method for rehabilitating those who want to put behind them drug addiction and related criminal law problems. This issue has been of particular concern to me because it so deeply impacts the community I represent and because there has been so little initiative to find meaningful remedies to this problem. I have proposed legislation which would use tax credits to establish housing programs with "wrap around" programs for treating drug addiction and mental health, providing job training, anger management and family support. I have advocated for legislation on the state level to remove some of the legal barriers which prohibit ex-offenders from holding scores of job titles for life.

4.  I have known Gerald Zero, the principal officer of Teamsters Local 705 for many years. We have worked together to build grassroots coalitions of labor and civil rights groups. I am familiar with Teamsters Local 705. I am aware of, an applaud, the efforts of Teamsters Local 705 to organize low wage workers and minorities and to improve the standard of living for themselves, their families and their communities. Gerald Zero has demonstrated an exceptional ability to assess character, to move working men and women to ethically and morally higher ground, to build individual and collective leadership through work experiences.

5.  I am familiar with TASC, Inc. a not-for-profit corporation licensed by the Illinois

Department of Human Services, to provide clinical substance abuse assessment and treatment referral services to the Illinois court system. I have worked with TASC on legislative initiatives and have had many opportunities to interact with TASC professionals, formally and informally, on the problems of reintegrating ex-offenders into society at large. TASC, Inc. is highly qualified to assess the recovery and rehabilitation process of probationers referred by the courts.

6. Based on briefings from Gerald Zero and TASC professionals Angela Boyd-Williams and Dezire Gordon, I strongly believe that Richard Rucker should be afforded the opportunity to become employed as a union organizer for Teamsters Local 705. He has completed a drug rehabilitation program and displayed an ongoing commitment to his recovery process. He has demonstrated his ability to succeed as a union organizer by achieving a high rating at the AFL-CIO Organizing Institute. I respect the judgement of Gerald Zero and the TASC, Inc. professionals that Richard Rucker would be successful as a Union organizer for Teamsters Local 705.

7. A narcotics violation, so unfortunately prevalent in our society today, should not be an impediment to someone who has shown the determination to overcome a narcotics addiction and who is striving for a chance to succeed. Richard Rucker has accumulated an impressive record in his attempt to rejoin civil society after his narcotics conviction. The federal statute should not become another bar to moving this ex-offender to a positive, productive and useful role in society.

Danny K. Davis
Member of Congress

8-4-03
Date

- 3 -

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**DOCKETED**
**AUG 08 2003**

## I. (a) PLAINTIFFS

Local 705, International Brotherhood
of Teamsters, AFL-CIO, and
Richard Rucker

## DEFENDANTS

United States Department of Labor

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___Cook___
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**JUDGE KOCORAS**

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Peggy A. Hillman
445 North Pennsylvania, Suite 401
Indianapolis, IN 46204 317-637-2345

ATTORNEYS (IF KNOWN)

# 03C 5480

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☒ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Petition for exemption from 29 U.S.C. Section 504 (a) Bar

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint
JURY DEMAND: ☐ YES ☐ NO

## VIII. This case

☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE 8/7/03

SIGNATURE OF ATTORNEY OF RECORD
_Peggy A. Hillman_

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**DOCKETED**

AUG 0 8 2003

In the Matter of

Local 705, International
Brotherhood of Teamsters, AFL-CIO, and
Richard Rucker

        vs.

United States Department of Labor

Case Number **03C 5480**

**JUDGE KOCORAS**

## APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Petitioners, Local 705, International Brotherhood of Teamsters, AFL-CIO,
and Richard Rucker

MAGISTRATE JUDGE SCHENKIER

| (A) | (B) |
|---|---|
| SIGNATURE *[signature]* | SIGNATURE *[signature]* |
| NAME Peggy A. Hillman | NAME Michael H. Slutsky |
| FIRM Law Offices of Peggy A. Hillman | FIRM Allison, Slutsky & Kennedy |
| STREET ADDRESS 445 North Pennsylvania, Suite 401 | STREET ADDRESS 208 South LaSalle St., Suite 1880 |
| CITY/STATE/ZIP Indianapolis, Indiana 46204 | CITY/STATE/ZIP Chicago, IL 60604 |
| TELEPHONE NUMBER 317-637-2345    FAX NUMBER 317-637-2369 | TELEPHONE NUMBER 312-364-9400    FAX NUMBER 312-364-9410 |
| E-MAIL ADDRESS PeggyHillman@acsplus.com | E-MAIL ADDRESS slutsky@ask-attorneys.com |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 1218719 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 02635569 |
| MEMBER OF TRIAL BAR? YES ☒ NO ☐ | MEMBER OF TRIAL BAR? YES ☒ NO ☐ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☒ |
|  | DESIGNATED AS LOCAL COUNSEL? YES ☒ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE *[signature]* | SIGNATURE |
| NAME N. Elizabeth Reynolds | NAME |
| FIRM Allison, Slutsky & Kennedy | FIRM |
| STREET ADDRESS 208 South LaSalle St., Suite 1880 | STREET ADDRESS |
| CITY/STATE/ZIP Chicago 60604 | CITY/STATE/ZIP |
| TELEPHONE NUMBER 364-9400    FAX NUMBER 312-364-9410 | TELEPHONE NUMBER    FAX NUMBER |
| E-MAIL ADDRESS reynolds@ask-attorneys.com | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6257465 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☒ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☒ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |