DOCKETED
OCT 2 3 2003

FILED
OCT 2 2 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LOCAL 705, INTERNATIONAL ) 
BROTHERHOOD OF TEAMSTERS, ) 
AFL-CIO, and RICHARD RUCKER, ) 
  ) 
        Petitioners, ) 
  )   No. 03 C 5480
     v. ) 
  )   Judge Kocoras
UNITED STATES DEPARTMENT OF LABOR, ) 
  ) 
        Respondent. ) 

## DEPARTMENT OF LABOR'S POSITION ON
## PETITION FOR EXEMPTION FROM 29 U.S.C. § 504(a) BAR

Richard Rucker, the petitioner, was convicted on November 7, 2002 of felony possession of a controlled substance (approximately 0.3 grams of cocaine) in violation of Illinois criminal law. He was sentenced to time served (April to November 2002) and twenty-four months of felony probation. The offense occurred while Mr. Rucker was serving probation for a previous conviction on September 13, 2001, for felony delivery of a controlled substance (approximately 0.4 grams of heroin) also in violation of Illinois criminal law. He was sentenced to twenty-four months of felony probation and is still on probation.

As a result of these convictions, petitioner is prohibited from service or employment with a labor organization for 13 years following entry of the judgment of conviction or end of any resulting imprisonment, whichever is later, pursuant to section 504(a) of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"). 29 U.S.C. § 504(a). An exemption from the disability period may be granted by the district court if the court determines that petitioner's service or employment

with the labor organization would not be contrary to the purposes of the LMRDA.[1] Due to his

November 7, 2002 conviction, Mr. Rucker is barred from holding union office under 29 U.S.C. § 504

until November 2015.

Petitioner, in his petition to this Court, requests relief from the 13-year disability period. He

requests that the disability period be waived so that he can seek employment in a labor organization

as an organizer for Local 705 of the International Brotherhood of Teamsters.[2] Upon being informed

of petitioner's petition, the Secretary undertook an investigation in order to present to the court her

position concerning the exemption request. The investigation focused on whether the petitioner is

rehabilitated. In determining whether there has been rehabilitation, the Secretary considers a variety

of factors, including the nature of the crime, the petitioner's history prior to the crime, his actions

subsequent to the crime, his reputation and activities in the community, and the making of restitution

for the crime. The Secretary of Labor opposes petitioner's request for an exemption because the

record fails to show that petitioner is rehabilitated and that he can be expected to adhere to the highest

standards of responsibility and ethical conduct needed to serve as an employee of a labor organization.

### Relevant Facts

According to records obtained from the Cook County Circuit Court in Illinois and the Chicago

Police Department, Mr. Rucker was arrested on February 13, 2002, and convicted on November 7,

2002, for possession of a controlled substance (approximately 0.3 grams of cocaine in violation of

---

[1] Section 504(a) also provides that the 13-year disability period may be reduced by the sentencing
court to a period of at least three years upon motion of the petitioner. Petitioner has made no such
motion in this case. If he were to do so, the Secretary would oppose it for the same reasons she
opposes the motion for exemption.

[2] Local 705 has listed itself as a plaintiff, but the local does not appear to have standing under 29
U.S.C. § 504 to be a party in these proceedings.

Illinois criminal law (720-570 ILCS, §401(d) and § 407(b)(2)). He was sentenced to time served (April to November 2002) and twenty-four months of felony probation. The offense occurred while Mr. Rucker was serving a 24-month probation for a previous July 1, 2001, arrest and September 13, 2001, conviction in the same court for delivery of a controlled substance (approximately 0.4 grams of heroin in violation of Illinois criminal law (720-507 ILCS, §401(d)). He was sentenced to twenty-four months of felony probation for that offense. Exhibits 1, 4 and 5.[3]

Mr. Rucker has a history of drug addiction, and has admitted to being a recreational heroin user since 1985, and a regular user beginning in 1998. Exhibit 10. Mr. Rucker has been treated for his drug problems through Treatment Alternatives for Safe Communities, Inc. and the South East Alcohol and Drug Abuse Center. Exhibit 12. He has successfully completed his scheduled treatments. Exhibits 1 and 13. However, Mr. Rucker has only just recently made arrangements to begin paying the $7 per session fees he owes to the South East Alcohol and Drug Abuse Center for outpatient treatment. According to the Drug Abuse Center nonpayment of the fee results in Mr. Rucker being "out of compliance" with the Statement of Client Financial Responsibility he signed at the beginning of the program. Exhibit 10. The Drug Abuse Center has some reservations about Mr. Rucker's rehabilitation because of his failure, during his treatment, to pay the required fees and, according to Michael Hillbruner, the Drug Abuse Center's Director of Adult Outpatient, such nonpayment is drug related behavior. Exhibit 13. Additionally, Mr. Rucker has only paid $53 of the $290 he owes in probation fees. Exhibit 9.

Mr. Rucker is currently unemployed and has not held full-time employment for any significant

---

[3] Exhibits are contained in the numbered Report of Investigation filed with this court on Monday, October 20, 2003.

3

length of time. Previously, Mr. Rucker had worked part-time for the United Parcel Service for 9 years from 1990 to 1999. UPS terminated Mr. Rucker for theft, and his termination was upheld by an arbitrator. Exhibits 8, 10 and 20.

The Department's investigation also disclosed that petitioner worked as an organizer for Local for two months sometime in 2002. This activity is prohibited by 29 U.S.C. § 504(a), and, if done willfully, constitutes a criminal violation under 29 U.S.C. § 504(b).

## Legal Standards for Granting Exemption

In deciding whether to grant an exemption from the disability period, the courts are directed to determine, pursuant to sentencing guidelines and policy statements under 28 U.S.C. § 994(a), whether an individual's proposed service or employment would be contrary to the purposes of the LMRDA. 29 U.S.C. § 504(a). The relevant policy statement provides that "relief shall not be given to aid rehabilitation, but may be granted only following a clear demonstration by the convicted person that he or she has been rehabilitated since commission of the disqualifying crime and can therefore be trusted not to endanger the organization in the position for which he or she seeks relief from disability." *Relief From Disability Pertaining to Convicted Persons Prohibited From Holding Certain Positions* (Policy Statement) § 5J1.1, United States Sentencing Guidelines (June 15, 1988). Thus, a determination that petitioner is rehabilitated is required by the court prior to the granting of an exemption from the disability period.

This policy statement reflects a decision by the district court in *Nass v. Local 348, Warehouse Production, Sales and Service Employees Union*, 503 F. Supp. 217 (E.D.N.Y. 1980), *aff'd without opinion*, 657 F.2d 264 (2d Cir. 1981), in which a union officer sought to enjoin his removal from his union position by asserting that his certificate of relief from disability issued by a state court

4

amounted to a badge of rehabilitation for purposes of section 504. In denying the request for an

injunction, the district court found that the state court had made no determination of rehabilitation,

but rather had issued the certificate as an "aid to rehabilitation" which is insufficient to obtain relief

from the disability of section 504. *Id.* at 220. For relief to be granted under section 504, evidence

of rehabilitation must be offered, and the court must determine that rehabilitation has occurred. *See*

*also Petition of Belpedio,* 753 F.Supp. 239, 241 (N.D. Ill. 1990)(relief for post November-1987 crime

involving aggravated battery denied under U.S.S.G. § 5J1.1 where rehabilitation was not clearly

demonstrated by convicted applicant who expressed no remorse or contrition for crime committed

during altercation at touch football game); *Beardsley v. U.S. Department of Labor*, 807 F.Supp. 1192,

1195(W.D. Pa. 1992) (disability relief for post-November 1987 crime involving cocaine "violation

of narcotics laws" denied under U.S.S.G. § 5J1.1 where rehabilitation was not clearly demonstrated

by convicted applicant subject to longstanding problem with alcoholism); *Carollo v. Herman*, 84

F.Supp.2d 374, 377(E.D.N.Y. 2000)(rejecting convicted individual's petition for immediate

declaratory judgment of relief under 29 U.S.C. § 504(a)(B) because the statutorily required hearing

had not been held, required notice had not been given to the state prosecutor who had convicted the

petitioner, and the petitioner had not offered sufficient evidence of rehabilitation and trustworthiness

to warrant holding the position of union delegate pursuant to U.S.S.G. 5J1.1.); *but cf. Claudio v.*

*United States Department of Labor*, 137 F.Supp.2d 405, 410-411 (S.D.N.Y. 2001)(preliminary

injunction granted allowing petitioner, who had eight years earlier been convicted of robbery and

narcotics violations, to continue working as a business agent prior to final hearing on petition where

petitioner and union intervener demonstrated irreparable harm and the likelihood of success on the

merits after court also found in part that petitioner was rehabilitated). Relief from the disability for purposes of employment to aid in rehabilitation is contrary to the statute and applicable case law.

The United States Parole Commission, which previously had responsibility for requests for an exemption from the disability of section 504, has created a significant body of law in this area. These decisions are beneficial to this court in ruling on petitioner's request for relief, in that the Parole Commission faced the same issue that this court is presented with: whether granting relief from the section 504 disability would be contrary to the purposes of the LMRDA.[4]

In making its determinations, the Parole Commission consistently has considered three factors: (1) the character and gravity of the disqualifying offense, (2) the nature of the position for which the exemption is requested, and (3) the extent to which the record indicates that an applicant is sufficiently rehabilitated and can be expected to adhere to the highest standards of responsibility and ethical conduct in carrying out the duties of the union office. See, e.g., *Application of Lonzo Donald Gray*, United States Parole Commission, No. L-55, slip op. at 9 (1980)(copy attached). The applicant has the burden to show by a preponderance of the evidence that he has been rehabilitated. *Id.* at 9. He must prove that despite his disqualifying conviction, he has conducted himself in a such a manner as to indicate he is in fact a person of high standards of responsibility and ethical conduct who can be entrusted with union power in a position of responsibility, trust and leadership; that there is no reason to feel that he will abuse his powers through corruption, breach of fiduciary duty, violence or other misconduct; and that he by his conduct and activities has led an exemplary life. *Id.* at 9-18. The Parole Commission does not view section 504 as punitive in nature, but rather as "a remedial statute

---

[4] Parole Commission regulations provide for the availability of copies of its decisions. 28 C.F.R. § 4.17.

intended to protect the public interest in having honest, trustworthy and responsible officials in labor unions." Id. at 11.

## Argument

### Petitioner's Request Is Contrary to the Purposes of the LMRDA

A review of the factors relevant to a determination concerning an exemption from the disability period indicates that the granting of petitioner's request would be contrary to the purposes of the LMRDA. Petitioner has a criminal history of drug abuse. His application does not adequately address this serious problem, which can easily affect the reputation and integrity of Local 705and most importantly the local 's members.

### I.      Character and gravity of the offense

Petitioner was convicted of felony possession of cocaine and felony delivery of heroin. These are the types of crimes Congress sought to guard against when the LMRDA was enacted. See 29 U.S.C. § 504(a) (including "violations of narcotic laws" as listed offense). Further, convictions involving narcotics, cocaine and heroin, should be considered as very serious in light of this nation's commitment to the war against drugs. Federal, state and local governments have invested enormous efforts and resources to combat the illegal use of cocaine and heroin in this country in order to eliminate the devastating destruction these highly addictive drugs have inflicted on our society.

The fact that Mr. Rucker's crimes were not directly related to union business is not a factor that should weigh heavily in petitioner's favor. The section 504 prohibition plainly covers both felonies involving labor organizations and employee benefit plans, and those that do not. 29 U.S.C. § 504(a). As long as the disqualifying offenses are among those covered by the statute the bar applies, and it is not significant whether or not the crime was related to the operation of a union. Congress

did not require that the offenses be directly related to union business and thus clearly has already made the judgment that violations of the nation's narcotics laws are serious offenses which disqualify an individual from union office. *See also Petition of Belpedio*, 753 F.Supp. at 240. Further, the statute should be broadly interpreted to fulfill its purpose, i.e., to protect the reputation, integrity and operation of labor unions by banning criminal offenders from performing certain functions regarding labor unions for a lengthy period. *See Illario v. Frawley*, 426 F.Supp. 1132, 1137 (D.N.J. 1977).

## II.    Nature of the position sought

Petitioner seeks an exemption permitting him to become an organizer for Local 705, a labor organization. Section 504 specifically makes individuals "convicted of . . . violation (or attempted violation) of narcotics laws" subject to the its bar against becoming a union "organizer . . . or representative in any capacity of any labor organization." *See* 29 U.S.C. § 504 (a)(2).

The person who holds an organizer position is a key liaison between employers and union members. An organizer also acts as a representative of the union to civic organizations and in the local community. It is important that union representatives be members who have the trust of the community and who would not call into question the integrity of the union. The petitioner currently is incapable of engendering such trust or projecting the proper integrity because of his recent convictions.

## III.    Rehabilitation

Most importantly, petitioner has the burden to show by a preponderance of the evidence that he is rehabilitated. *Application of Lonzo Donald Gray*, slip op. at 14. In gauging the extent to which petitioner is rehabilitated, the court should impose a standard of adherence to the highest level of responsibility and ethical conduct, a standard which is higher than that which is applied to the

8

granting of parole or discharge from probation. Petitioner thus far has failed to show such a level of responsibility and conduct.

Petitioner's history of convictions and testimony show a pattern of drug usage spanning more than a decade. He has recently been convicted for possessing cocaine and delivery of heroin. The delivery of heroin conviction is a disqualifying offense that was not made a part of his petition, but was mentioned in Mr. Rucker's affidavit.

While on probation, the petitioner was arrested on February 13, 2002 for possession of cocaine, less than a year after his July 1, 2001, arrest and September 13, 2001, conviction, for delivery of heroin. After being released on probation, petitioner has only paid $53 out of the $290 he owes in probation fees and has just signed an agreement to begin paying the $7 per session fees he owes and should have been paying to the South East Alcohol and Drug Abuse Center for outpatient treatment. Further, after being released, petitioner has worked as a union organizer for two months, in violation of Section 504. He is currently unemployed and does not appear to have worked at any job, other than unlawfully as an organizer, since being released on probation.

In addition to his union activity, petitioner asserts that he is a changed person who no longer uses drugs. This is insufficient to show rehabilitation. At best, his assertions indicate that, at this time, petitioner is on the path to rehabilitation. His assertion is especially weak when weighed against the petitioner's lengthy history of prior drug use, his inability to successfully serve his first and still recent probation, and the short amount of time he has had to become rehabilitated after he was released on probation for the second time. *Beardsley v. U.S. Department of Labor*, 807 F.Supp. at 1194-1195.

The petitioner may further assert that the job would aid in his rehabilitation. As demonstrated

above, such evidence is insufficient to obtain relief from the section 504 disability.

Despite that the burden of proof is on him, petitioner points to no convincing evidence of rehabilitation. *Id.; Petition of Belpedio*, 753 F.Supp. at 241; *Beardsley v. U.S. Department of Labor*, 807 F.Supp. at 1195; *Carollo v. Herman*, 84 F.Supp.2d at 377. Although petitioner may be taking measures to improve his life, his problems have been a part of him for many years. At best, the assumption of the duties of a union organizer while still on probation and less than a year after his most recent conviction is premature. It is too early to reach the conclusion that petitioner is sufficiently rehabilitated within the meaning of section 504. The Department would prefer to evaluate Mr. Rucker, at a minimum, after he successfully completes his probation, and has succeeded in society even absent the coercion of probation. Congress clearly intended that a person under a section 504 disqualification should ordinarily be required to demonstrate clear rehabilitation over a period of time. By analogy, section 504(a)'s related provision allowing for a reduction of the length of the bar by a sentencing court does not permit a reduction to less than three years.

The reasons advanced by petitioner in support of his motion for relief from the 13-year disability are inadequate under the statute and applicable case law. To afford relief on the basis of the evidence presented by petitioner would require rejection of the standards of rehabilitation and trustworthiness that Congress intended. Disability under section 504 was intended to secure the public's interest in corruption free trade unions. Relief from the disability was deemed extraordinary and for a rare occasion. *See* 128 Cong. Rec. 32446 (1982)(statement of Senator Hatch). To allow petitioner relief from the section 504 disability based on the evidence put forward would undermine the most basic of the statute's objectives. Clearly, this case does not present one of the rare occasions that Congress envisioned might call for an exemption.

**Conclusion**

Petitioner has failed to show that he has been rehabilitated and is worthy of being placed into

a position of trust within a labor organization. The Department of Labor respectfully submits that

petitioner's petition for an exemption should be denied.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:

CRAIG A. OSWALD
Assistant U.S. Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-9080

11

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LOCAL 705, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL, CIO and RICHARD RUCKER, | ) ) ) | CIVIL ACTION NO. 03C 5480 |
| Plaintiff, | ) ) | JUDGE KOCORAS |
| v. | ) ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF LABOR, | ) ) | |
| Defendant. | ) ) ) | |

## DECLARATION OF JOHN H. HEANEY

1.      I, John H. Heaney, am the Chief, Division of Enforcement, Office of Labor-

Management Standards, Employment Standards Administration, United States

Department of Labor (Department). I am charged with providing the Department's

response to the application of Richard Rucker ("petitioner") under 29 U.S.C. § 504(a) for

relief from the statutory 13-year disability that prohibits him from serving as an employee

of a labor organization due to his felony convictions under the narcotics laws of the State

of Illinois. Petitioner requests that the Court grant an exemption to permit him to accept

employment in a labor organization as an organizer for Local 705 of the International

Brotherhood of Teamsters, AFL-CIO (Local 705).

2.      The Department of Labor opposes the petition for an exemption from the
prohibitions of section 504 of the LMRDA, 29 U.S.C. § 504. The Department's
investigation failed to show that petitioner is rehabilitated and that he can be expected to
adhere to the highest standards of responsibility and ethical conduct needed to serve, as
he stated in his petition, as an "organizer." Thus, petitioner's request is "contrary to the
purposes of [the] Act," 29 U.S.C. § 504(a), and should be denied.

3.      In determining whether petitioner has been rehabilitated, the Department
considered a variety of factors, including the nature of the crime, the petitioner's history
prior to the crime, his actions subsequent to the crime, his reputation and activities in the
community, and the making of restitution for the crime. The information discovered
during the Department's investigation is set forth in a Report of Investigation. Although
the Department considered all the investigative findings, including those favorable to the
petitioner, the facts discussed herein were central to the determination that petitioner's
exemption request be denied.

4.      Specifically, the Department found that petitioner was convicted on November 7,
2002, of possession of a controlled substance (approximately 0.3 grams of cocaine) in
violation of Illinois criminal law (720-570 ILCS. §401(d) and § 407(b)(2)). He was
sentenced to time served (April to November 2002) and twenty-four months of felony
probation. He is still on probation. This offense occurred while petitioner was serving
another 24-month probation period for a previous conviction on September 13, 2001, for
delivery of a controlled substance (approximately 0.4 grams of heroin) in violation of
Illinois criminal law (720-507 ILCS. §401(d)). Both convictions act as a bar preventing
petitioner, for 13 years after the later of conviction or the end of imprisonment, from

working as an organizer. 29 U.S.C. § 504(a). The most recent conviction prevents him from holding that position until November 2015.

5.      Mr. Rucker has a history of drug addiction, and has admitted to being a recreational heroin user since 1985, and a regular user beginning in 1998. Even though Mr. Rucker had worked part-time for the United Parcel Service, he is presently unemployed and has not held any full-time employment for any significant length of time. A former employer, UPS, terminated Mr. Rucker for theft and this determination was upheld by an arbitrator.

6.      Currently, Mr. Rucker has paid only $53 of the $290 he owes in probation fees and has been delinquent in paying the $7 per session fees he owes to the South East Alcohol and Drug Abuse Center for outpatient treatment. According to the Drug Abuse Center, nonpayment of the fee results in Mr. Rucker being "out of compliance" with the Statement of Client Financial Responsibility he signed at the beginning of the program. The Drug Abuse Center has some reservations about Mr. Rucker's rehabilitation because of his failure until after filing his petition to pay the required fees. A Center employee has informed the Department that, in the employee's opinion, such nonpayment is "drug related behavior."

7.      The Department also discovered that petitioner worked as an organizer for Local 705 for two months sometime in 2002. This activity is prohibited by 29 U.S.C. § 504(a), and, if done willfully, constitutes a criminal violation under 29 U.S.C. § 504(b).

8.      The above findings and other information detailed in the Report of Investigation prevent the Department from recommending favorably on the petition. The Department

also notes that it is premature to determine whether petitioner has been rehabilitated. His conviction is not yet a year old, and he is still on probation.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 20ᵗʰ day of _October_, 2003, in the City of Washington, District of Columbia.

John H. Heaney, Chief
Division of Enforcement
Office of Labor-Management Standards
Employment Standards Administration
United States Department of Labor

UNITED STATES PAROLE COMMISSION

DEPARTMENT OF JUSTICE

In the Matter of the Application of )
    LONZO DONALD GRAY )
for a Certificate of Exemption under )
Section 504 of the Labor-Management )
Reporting and Disclosure Act of 1959 )

Application

No. L-55

## DECISION OF THE COMMISSION

### INTRODUCTION

On April 7, 1980, at College Park, Maryland, the United
States Parole Commission, with eight Members present, examined and
considered the application filed by Lonzo Donald Gray of
747 West Whitehouse Circle, Harlingen, Texas for a Certificate of
Exemption under Section 504(a) of the Labor-Management Reporting
and Disclosure Act of 1959, [P.L. 86-257; 73 Stat. 519; 29 U.S.C.
§§401-531 (1959)]. Careful review has been made by the Commission
of the entire file, including the Application dated March 13, 1979
and Attachments including Sentencing Memorandum of Judge Finis
Cowan, the Applicant's Affidavit, all letter of recommendation,
Supplement to Application and Attachments dated March 26, 1979,
a letter received from the United States Attorney's Office of the
District of conviction, the memorandum of the United States
Department of Labor in opposition to the Application and proposed
findings and conclusions, Applicant's proposed findings of fact and
conclusions of law and arguments in support of the Application
for the Certificate, the Administrative Law Judge's Recommended
Decision, the Labor Department's Exceptions to the Recommended
Decision and Memorandum in Support thereof, the Transcript of the
September 20, 1979 hearing before Administrative Law Judge
John J. McCarthy, a letter from Applicant in opposition to the
Labor Department's Exceptions and attachment, all Exhibits filed

- 2 -

in this case, Order to Labor Department from the U.S. Parole
Commission dated April 3, 1980 to further investigate the
issue of restitution, and Supplemental Statement of the Labor
Department dated April 4, 1980 with Modification of Probation
Judgment of the District Court of Cameron County, Texas dated
March 20, 1980 as an attachment.

     Applicant was convicted in Federal District Court in
Galveston, Texas on September 5, 1978 on one count each of
four multi-count indictments charging conspiracy to defraud the
U.S., and misapplication of funds of a Comprehensive Employment
and Training Act (CETA) Program, in violation of 18 U.S.C.
§371 and 18 U.S.C. §665a. The other counts of the four indictments
were dismissed. Applicant was also convicted after a guilty
plea in the District Court of Cameron County, Texas, 138th
Judicial District of theft of funds from the Harlingen Independent
School District and the Texas Education Agency (78 CR-478-D).
He was sentenced on January 5, 1979 on the Federal offenses
and on all four charges received a suspended term of 5 years
of imprisonment for which 5 years of probation was substituted,
a fine of $10,000, and an order to make $24,000 in restitution
payments. The restitution amount was subsequently reduced
to $14,500, to be shared jointly by applicant and his brother
Clarence Gray, a co-defendant.

     Applicant was sentenced on the state offenses on
December 21, 1978 to a suspended term of 5 years of imprisonment
for which a 5 year probation term was substituted. Applicant was
ordered to pay $60,211.73 as restitution; the obligation to be
shared jointly with his co-defendant, Clarence Gray. The state
restitution issue will be discussed at length later in this
opinion. The state and federal probation terms are being served
concurrently, and Applicant is presently under joint state and

- 3 -

federal supervision.

By virtue of the foregoing convictions, Title 29 U.S.C., Section 504(a) specifically prohibits applicant from serving:

> "(1) as an officer, director, trustee, member of any executive board or similar governing body, business agent, manager, organizer or other employee (other than as an employee performing exclusively clerical or custodial duties) of any labor organization, * * *

> ***for five years *** after such conviction *** unless ***(B) the Board of Parole of the United States Department of Justice determines that such person's service in any capacity referred to in clause (1) *** would not be contrary to the purposes of this chapter."

The U.S. Parole Commission, as successor to the former Board of Parole, now exercises the above authority. In Applicant's case, the five year bar would expire on December 20, 1983.

Applicant seeks the Certificate in order to be permitted to return to his former positions as Business Manager, Financial Secretary and Treasurer of Local No. 823 of the United Association of Plumbers and Pipefitters of Harlingen, Texas, and Secretary-Treasurer of the Texas Pipe Trades Association of Harlingen, Texas. An administrative hearing was held in Washington, D.C. on September 20, 1979 at which Mr. Gray, the applicant, appeared with counsel. The Secretary of Labor, through counsel, appeared in opposition to the application, maintaining that granting an exemption would be contrary to the purposes of the above Act. After the September 20, 1979 hearing an opportunity was afforded the parties to file opposing briefs. The Recommended Decision was submitted on January 28, 1980.

### FINDINGS OF FACT

1. Lonzo Donald Gray, the applicant, was born in Harlingen, Texas, on April 10, 1931.

2. Applicant is married and has one child, a daughter, aged 22.

- 4 -

3.  Applicant is a high-school graduate and served in the U.S. Army
    from October 1952 to September 1954.

4.  Applicant served as apprentice and, later, as journeyman and
    supervisor in several positions in the pipe trades.  On July 1,
    1966 he became Business Manager, Financial Secretary and
    Treasurer of Local 823 to which he has been elected by the members
    for successive 3-year terms.  By virtue of his position as
    Business Manager he has been a delegate to the Texas Pipe
    Trades Association and has served as its Secretary-Treasurer
    since 1972.  In his application of March 13, 1979, applicant
    advised that he still held those positions.  In a supplement to
    his application, received by the Commission on March 26, 1979,
    the applicant stated he no longer held the positions in Local
    823 and the Association.

5.  Prior to 1973 Applicant taught certain vocational training
    subjects at Texas Southmost College.  Sometime prior to 1975,
    when Cameron County, Texas was seeking sponsorship of a
    CETA program, county officials suggested that Local 823 sponsor
    one.  Under Applicant's leadership, a training program princi-
    pally for Mexican-Americans was established to teach pipe
    trades and other vocational skills.  Later, the membership
    and other union officers decided to discontinue the program.
    At that time Applicant, his co-defendant Clarence Gray, and
    others established 3 entities to continue to implement and
    expand the program and operated it for several years.  They
    did not advise the Cameron County Commissioners, who channeled
    the CETA funds to them, and others, including the U.S. Dept.
    of Labor, that the Union was no longer sponsoring the programs
    and in effect, continued to represent that the programs were
    under union sponsorship.  Applicant was a key person in the
    teaching and administrative aspects of running the programs

- 5 -

while still functioning as Business Manager, Financial Secretary
and Treasurer of Local 323.

6. When certain checks came from Cameron County or the Labor
Dept. to the order of the union; union bookkeepers, under
Applicant's direction, would endorse them in favor of one
of the entities sponsoring the program.

7. Applicant retained a company, R & S Janitorial Service, owned
by 2 other co-defendants, to render service to the teaching
entities which were using a building of which Applicant was a
part owner. The record indicates that approximately $2,500
was paid for services never performed.

8. Applicant rented his own tools to the training entities. The
amount of loss, if any, is unknown.

9. Trainees performed uncompensated services on other real
property owned by Applicant. The record indicates that the
estimated value of the services was $2,500.

10. The Commissioners of Cameron County were not advised of the
self-dealing practices specified above.

11. The state court conviction in 78 C.R. 478-D is based on the
alleged purchase of supplies for the program which were not
delivered by the suppliers although paid for with funds of
of the Harlingen Independent School District or the Texas
Education Society. Nine other State Court indictments arising
out of the operation of the training program were dismissed
shortly after the plea of guilty to the indictment in this case.

12. Prior to the time of the Commission's Hearing on the Record
(April 7, 1980), Applicant admitted to a Federal restitution
obligation of $7,250 of which half had been paid. Applicant
had already paid $1,190 against his state restitution; a
total of $8,440. This establishes a minimum amount of unjust
enrichment and/or misapplication of funds.

- 6 -

13. There was inconsistent testimony and documentation on Applicant's
    part as to the amount of state restitution actually owing.  The
    $60,211 figure imposed by the State Court was shown at various
    times as having been reduced to $45,684, $10,000, $2,500, or 0,
    as found by the Administrative Law Judge in his recommended
    decision of January 28, 1980.  This was resolved when the Labor
    Department, in conducting a further investigation upon the
    direction of the U.S. Parole Commission, produced a judgment of the
    District Court of Cameron County, Texas dated March 20, 1980,
    which ordered Applicant to pay restitution of $44,494.34 at
    $1,000 per month and stated that he had already paid $1,190.33
    on March 19, 1980.

14. Unless some of the above sum is offset by credits allowed by
    the Court the maximum unjust enrichment and/or misapplication of
    funds for which restitution is to be paid, taking the total of the
    amount in Finding 12 and the March 20 judgment in Finding 13,
    could amount to $52,934.34

15. The items in the Introduction, above, concerning all aspects of
    applicant's offense, convictions, sentences, and post-sentence
    events are incorporated herein as findings of fact.

16. Three of the Federal indictments to which applicant pleaded
    guilty to one count of each alleged that in the years 1975, 1976,
    and 1977 applicant, his brother Clarence Gray and Cruz Castillo
    conspired to induce the Labor Department to issue CETA funds
    to three training programs by falsely representing that the
    programs would be carried out by Local 823.

17. The fourth Federal indictment to which applicant pleaded guilty
    to one count alleged that CETA funds were improperly diverted to
    the R & S Janitorial Services.

18. $5,000 of the $10,000 fine imposed on Applicant by the U.S.
    District Court was paid prior to April 7, 1980.

- 7 -

19. Applicant's attorney indicated that a civil action had been
    brought by Cameron County Resources to recover monies allegedly
    lost to the county through improper actions of applicant and
    others. He stated that no judgment had been entered, that the
    amount of damages was under discussion and had been reduced to
    about $8,000.

20. The principal position for which the exemption is sought is
    Business Manager of the United Association of Plumbers and Pipe-
    fitters, Local No. 823, of Harlingen, Texas. Applicant would
    also serve as Financial Secretary and Treasurer. Applicant's
    compensation was set at 20% over the journeyman hourly rate,
    resulting in an annual income from the Local of about $21,000,
    plus about $90 a month for expenses, and other fringe benefits.
    Accountable to the Board of Directors of the Local, applicant
    would be responsible for managing the operation of the
    Local. One of the key duties is locating job opportunities
    for members and arranging favorable contracts by personally
    negotiating with prospective employers in Texas and also
    in other areas. The Business Manager is also involved in
    the settlement of contract disputes affecting the members.
    The Local has 550 members. There is about $35,000 in the
    treasury. Applicant would have authority to issue checks for
    the Local, countersigned by the President, and to appoint
    committees within the Local. If the Exemption Certificate
    were granted, the present incumbent would vacate these
    positions, allowing applicant to occupy them if elected. An
    election would be held immediately.

21. Applicant also wishes to serve again as Secretary-Treasurer of the
    Texas Pipe Trades Association, an elective, unpaid position with
    an allowance of $75 a month for expenses. The association, whose
    council is made up of the business agents from each of the pipe

- 8 -

trade locals in the State, coordinates negotiating trends among the locals in the State, and facilitates the transfer of members to other employment areas under different locals.

22. Approximately 1,000 students, principally Mexican-Americans of a low educational level, participated in the training programs sponsored by CETA funds and operated by the entities established by applicant and others. Many were helped to improve their skills and employment status or to obtain employment.

23. Applicant had no arrests or convictions prior to the offenses and convictions which are the subject of this proceeding. The record contains testimony and/or letters from businessmen, professionals, government officials and other citizens, all attesting to the applicant's good character and reputation. Applicant has served in numerous unions and public service positions throughout his career as a labor official. Two union officers testified as to applicant's competence and rehabilitation.

24. Since resigning his union positions, applicant has been employed in a sales capacity by a business corporation which markets water treatment units.

25. The U.S. Attorney who prosecuted applicant before the U.S. District Court recommended that an exemption should not be granted at this time but might be granted later. He acknowledged applicant's cooperation in an investigation of similar Federal violations proceeding in Texas. The testimony at the September 20, 1979 hearing indicates the cooperation to have been part of a plea-bargain agreement.

26. Applicant has made several expressions of remorse for his actions, but has also attempted to explain them in terms of attempts to cope with government regulations and to satisfy conflicting demands of the union.

- 9 -

ISSUES, PRECEDENTS, CONTENTIONS OF
THE PARTIES AND COMMENT

In determining whether a Certificate of Exemption should
be granted it is necessary to consider three major factors:  the
character and gravity of the disqualifying offenses, the nature of
the positions for which the applicant is seeking the exemption, and
the extent to which the record indicates the applicant to be
sufficiently rehabilitated so as to adhere to the highest standards
of responsibility and ethical conduct sought to be fostered by the
Act [Application Elmer Hauck, No. L-33; Application of Raymond L.
Ficherkorn, No. L-48; Application of Alfred F. Chittenden, No. L-49,
Application of Willis N. Schonowski, No. L-50].

The burden of proof is upon the applicant to show by a
preponderance of the evidence that by his conduct and adjustment
in the community he is now worthy of holding a position of
responsibility, trust and leadership in a labor union and has
led an exemplary life.  [Application of Peter Postma, No. L-17;
Application of Michael Budzanoski, No. L-36; Application of
Raymond L. Ficherkorn, No. L-48].  Application of Edward Silver,
No. L-13].

To grant an exemption, the U.S. Parole Commission must
determine that Applicant's service in the requested positions
would not be contrary to the purposes of Chapter 11 of Title 29,
United States Code.  Congress states at the beginning of
Chapter 11 its findings of "....instances of breach of trust,
corruption, disregard of the rights of individual employees, and
other failure to observe high standards of responsibility and
ethical conduct (on the part of union leaders)...." to be a funda-
mental reason for the passage of this protective legislation
(29 U.S.C. 401(b)).  The legislative purpose of Chapter 11 is
further defined in Application of Peter Postma, No. L-17

- 10 -

as follows:

"Congress when it enacted Section 504 (a) was not seeking to punish anyone but to protect the public as well as the Union and to give aid in purging the Unions of unethical, unworthy and unreliable officials."

See also, Application of Raymond Fieberkorn, No. L-48 and Application of Willis N. Schonowski, No. L-50.

### The Character and Gravity of the Offenses

The offenses of which the applicant was convicted, although not connected directly with his union activities, constitute "instances of breach of trust ... and other failures to observe high standards of responsibility and ethical conduct" (29 U.S.C. section 401(b)). These are the types of activities, when performed by union officers, from which Congress sought to protect the public through enactment of section 504(a). The offenses of which applicant was convicted, as detailed in the record and in the above findings of fact, constitute a pattern of concealment, self-dealing, and either considerable unjust enrichment, and/or the failure to use required standards of care in the exercise of the fiduciary duty of expending the funds of other parties which were entrusted to applicant. Even in his attempts to present his case in the most favorable light, applicant did not negate the fact that he was convicted of offenses involving at the least a breach of the standard of prudent judgment, candor and careful dealing required of a person who occupies a position of trust. This offense pattern connotes the clear failure to uphold required high standards of responsibility and ethical conduct.

The applicant seeks to minimize the gravity of the disqualifying offenses by alleging that he neither intended nor achieved any personal enrichment from his activities regarding

the training programs. Nevertheless, he concedes to a substantial Federal restitution obligation, of which he has already paid one half, and has already started making payments against an even larger state restitution judgment, even though his Counsel contend that it can all be offset by credits. It is axiomatic that restitution is imposed to offset the unjust enrichment of a party holding another's funds, or the losses suffered through deliberate misapplication, or misapplication through lack of care, on the part of the holder of the funds. Since applicant can not contest his convictions in these proceedings, the restitution judgments must be accepted as an integral part of them.

The applicant also offered evidence that the training programs themselves were successful at training many underprivileged minority group individuals so that they would have the basic knowledge and skills for self-improvement and the Commission has so found. This is a mitigating factor and was expressly taken into account by the federal court in determining the applicant's sentence. This factor does not, however, detract from the seriousness of the applicant's illegal actions and their concealment by the applicant. Such factors may be very important to a sentencing court for purposes of determining the advisability of probation in lieu of imprisonment, but the Parole Commission must use a higher standard than that which governs imprisonment or release to the community. Application of Elmer Rauck, L-33; Milton Silverman, L-36; Raymond Oates, L-43; Raymond L. Fisberkorn, L-48. In the above context, it is to be noted that Section 504(a) is not punitive in nature, but is a remedial statute intended to protect the public interest in having honest, trustworthy and responsible officials in labor unions. Cf. Application of Peter Postma, No. L-17.

- 12 -

The U.S. District Court, even though it noted mitigating circumstances concerning the applicant's offenses, imposed the maximum period of probation supervision, and the maximum fine allowed by 18 U.S.C. §371, which refers to conspiracy to commit an offense against the United States. It did not limit this period to the requirement of 18 U.S.C. §665(a). The crime of misapplication of CETA funds, which includes the obtaining of such sums by fraud as specified in 18 U.S.C. 665(a), carries a maximum penalty of only two years imprisonment and a $10,000 fine if over $100 is involved, as in this case.

### Positions for which the Exemption is Sought

The Labor Department contends and applicant admits that the positions sought are important to the union, the membership and their dependents, the business community in Southeast Texas and elsewhere, the Texas Pipe Trades Association, and the public at large. Such positions, even though subordinate to the positions of President and Vice President of the Local, require incumbents who adhere to the highest standards of fidiciary responsibility. Applications of William K. Stearn (L-29), Thomas J. Haggerty (L-31), Milton Silverman (L-34), Michael Budzanoski (L-36) and John C. McCrae (P-1).

The positions of Business Manager, Financial Secretary, and Treasurer of a local are normally three separate offices held by three people. In some of the United Association locals these may be combined into one office upon approval of the President of the United Association of Plumbers and Pipefitters. Taken together, these three offices in local 823 have jurisdiction over virtually all the important functions of the local union. The Business Manager protects the local's trade jurisdiction, negotiates contracts

- 14 -

in the local's area.  Local 823 is the only building trades
local in the area.

The Texas Pipe Trades Association coordinates negotiating
trends and facilitates the transfer of workers from one local
union to another.  While the Secretary-Treasurer of the Association
is a nonpaid position, carrying an expense allowance of $75.00
per month, an officer of such an organization would have influence
over plumbers and pipefitter·locals throughout the state.

The scope of the above duties indicates the importance of
the requirement that the incumbent will adhere to the high standards
of responsibility and ethical conduct which the law and these
offices require.  The applicant previously occupied these same
offices and his highly influential position in the area's
labor movement was, in all likelihood, a major factor in securing
public funding for the training programs he sponsored.  When the
union severed all connection with the programs, the applicant
allowed the funding authorities to believe, and by his continued
participation in the programs and employment by the union
reinforced the belief, that the union continued to sponsor the
programs.  The District Court Judge in his Sentencing Memorandum
indicates that the applicant realized that without the union's
sponsorship of the programs, the funding authorities might be
unwilling to provide funds for the programs.  This practice
constitutes abuse of this position, just as the other offenses of
which applicant was convicted constitute an abuse of his position
with the training program.

### Rehabilitation

The applicant, as the moving party, has the burden of
showing by a preponderance of the evidence that he has been
rehabilitated.  Applications of Edward Silver, (L-13).

- 15 -

Anthony J. DeSia, (L-27), Michael Budzanoski (L-36) Raymond L. Fiberkorn (L-48), and Ullis N. Schonowski (L-50).

As discussed above, the applicant regrets the actions for which he was convicted and that they had a detrimental effect upon his family and his career and has expressed remorse. However, his testimony at the hearing before the Administrative Law Judge is also replete with explanations of his actions in terms of his attempts to cope with supposedly unfathomable government regulations and conflicting demands by the union.

Even though applicant was convicted in the U.S. District Court on September 5, 1978 and sentenced on January 5, 1979, and was convicted in the State Court on December 21, 1978, he did not step down from his union position as required by law until sometime between March 13 and March 26, 1979. He explains this by stating that he did not know about the requirement until it was explained to him in February or March 1979 by government officers in Washington. In view of his own experience in the Labor field since 1966, and his being represented throughout his present difficulties by experienced counsel, it is difficult for the Commission to accept this explanation for applicant's remaining in his position for over six months from the date of his first convictions; especially since he did not appeal those convictions.

Since applicant did not enter into compliance with his bar from his union positions until late March, 1979, and actually filed his application almost two weeks earlier, only a little over one year elapsed between that time and the full Commission's Hearing on the Record of April 7, 1980. During that

- 16 -

period, or shortly prior thereto, applicant has not done a
great deal to indicate that he accepts the convictions or
has made his best efforts to comply with the requirements of
the courts which convicted him. The degree of such acceptance
and effort is important to the issue of rehabilitation.

In this context, applicant had spent approximately one
year and two months under State and Federal probation supervision
at the time of the Hearing on the Record. The total period to
be served is five years. In late February 1980 Applicant paid
one-half of his $7,250 share of the federally imposed restitution.
As is indicated in the Commission's Finding 13, there was inconsis-
tency in applicant's testimony and documentation as to the
amount of restitution owing on the State Court judgment.
The assertion at the hearing before the Administrative Law
Judge was that it was 0. When indications appeared otherwise, it
was necessary for the Commission to order a further investigation
by the Labor Department which produced a judgment dated March 20,
1980 indicating $44,494.34 to be due, established a payment
schedule, and showed a payment to have been made on March 19,
1980. While the Commission may consider mitigating and
aggravating circumstances, it must deal with convictions and
sentencing provisions as imposed by the courts. Applicant,
through his Counsel, asserts that credits exist which will
balance out this obligation when brought before the Sentencing
Court. Since that was not done at the time of the Hearing on the
Record, the Parole Commission must look upon this sum as an
unsatisfied obligation.

Since applicant and his counsel knew that a finding
was made in the Administrative Law Judge's recommended decision

- 17 -

that the State Restitution was reduced to 0, and the judgment of
March 20, 1980 indicated otherwise, and since neither applicant
nor his counsel brought that fact to the Commission's attention
until April 4, 1980, the last business day before the Hearing
on the Record, and after a separate investigation was commenced;
the Commission considers that applicant was less than candid
with it in this respect.

In addition, as is indicated in Finding #19, a civil suit
by Cameron County Resources arising out of the operation of the
training program is still outstanding and applicant's liability
was estimated to be approximately $8,000.

In all, in this very important area of compliance
and acceptance, the whole picture is unsettled; and, during
this relatively short time, applicant's compliance has been too
limited, and certain actions have been less cooperative than
might be expected.

The fact that applicant was put on probation instead
of being incarcerated does not, in itself, indicate rehabilitation
as the standards for granting an exemption are higher than those
for release on parole or for probation.   Even if applicant's
supervision had been terminated by court order, which has not
happened in this case, due to the difference in the standard
required, that would not suffice to prove rehabilitation.
Application of Guy T. Long (L-3), Leon Strauss (L-18) Willis N.
Schonowski (L-50) and Raymond A. Oaras (L-43).

The prosecuting United States Attorney notes in his
letter the applicant's continued cooperation in investigations in
process.   This evidence, while to the applicant's benefit, does
not indicate that such cooperation is voluntary and there-
fore strong evidence of rehabilitation; in view of the fact that

- 18 -

applicant's assisting the investigation was made a part of the plea-bargaining arrangement.

Applicant has obtained gainful employment with a business corporation in a sales capacity which does not involve any responsibility for handling the funds of others. He has had no arrests or convictions prior or subsequent to those which are the subject matter of this proceeding. The record contains nine letters from businessmen, professionals, government officers and others attesting to applicant's good character and reputation. One businessman and two union officers testified as to applicant's personal qualities, public service, and competence in the labor field and gave their opinion that either he was rehabilitated or had no need of being rehabilitated. Applicant had served in many voluntary union and public service positions while a union official but testified that he has performed no union functions other than attending meetings as a member since he resigned his positions. He also testified that he no longer maintains any connection with CETA training programs.

This evidence alone, in view of all of the foregoing, is not adequate to prove by a preponderance of the evidence, the degree of rehabilitation which must be achieved in order to allow applicant to hold a fiduciary position requiring leadership, the highest degree of trust, and the responsibility for others and for union funds. In the relatively short time available, under the circumstances of this case, Applicant has not been able to prove rehabilitation as defined in the cases interpreting 29 U.S.C. §504. Application of Raymond L. Fieberkorn (L-48), Raymond A Oates (L-43), Willis N. Schonowski (L-50), and Michael Budzanoski (L-36).

- 19 -

### ULTIMATE CONCLUSIONS

1. Applicant's offenses are serious, of such a nature as to indicate a lack of understanding of the duties and responsibilities of a person who is entrusted with protecting the interests and expending the funds of others, and of the ethical standards of the position to which he aspires. While certain aspects of these offenses might be mitigated to some degree by the evidence applicant adduced, there is a factual basis to support applicant's guilty pleas, and no justification of the concealment of the self-dealing which occurred.

2. The positions for which the exemption is sought are important and affect Union Members and their dependents, management, the business community of Southeast Texas, the Texas Pipe Trades Association and its members, and the public. These are fiduciary positions requiring an incumbent who subscribes to the highest standards of trustworthiness.

3. Applicant has failed to establish convincing evidence of the degree of rehabilitation necessary for him to occupy positions of trust requiring his adherence to the highest fiduciary standards.

### DECISION

After a detailed consideration of the total record in this matter, pursuant to the authority vested in it by the provisions of Section 504(a) of the Labor-Management Reporting and Disclosure Act of 1959, the United States Parole Commission, by a majority of the quorum of eight Members present, concludes that it would not be consistent with the purpose of the LMRDA to grant the applicant a Certificate of Exemption. The application of Lonzo Donald Gray for a Certificate of Exemption to serve in the Union and Trade Association positions in question is accordingly hereby denied.

- 20 -

_5-30-80_
(Date)

CECIL C. McCALL
Chairman

_6-16-80_
(Date)

MICHAEL T. MULCRONE
Commissioner

_5/30/80_
(Date)

ROBERT D. VINCENT
Commissioner

_6-4-80_
(Date)

JOSEPH A. NARDOZA
Commissioner

_6/12/80_
(Date)

AUDREY A. KASLOW
Commissioner

Opinion of the Commission by Commissioner Robert D. Vincent

UNITED STATES PAROLE COMMISSION
DEPARTMENT OF JUSTICE

In the matter of )

APPLICATION OF LONZO DONALD GRAY FOR )
A CERTIFICATE OF EXEMPTION UNDER )     APPLICATION No.
SECTION 504(a) OF THE LABOR - )        L-55
MANAGEMENT REPORTING AND DISCLOSURE )
ACT OF 1959 )

## DISSENTING OPINION

We, the undersigned Members of the United States Parole
Commission dissent from the opinion of the majority of the quorum
of the Commission.

After a review and careful examination of the entire
record, We conclude that the Applicant has sustained the burden of
proof as to his rehabilitation for reasons stated by the
Administrative Law Judge in his Recommended Decision dated
January 28, 1980. The sentencing Judge in the U.S. District Court
found applicant to be sincerely and idealistically motivated in
his operation of the CETA training programs. In addition, the
record indicates that at times applicant returned unneeded CETA
funds to the sponsors. In our opinion, it would be consistent with
the purposes of the Labor Management Reporting and Disclosure Act
of 1959 to grant the Applicant a Certificate of Exemption at this
time.

May 30, 1980
(Date)

May 30, 1980
(Date)

6/12/80
(Date)

BENJAMIN J. MALCOLM
Vice Chairman

DOROTHY PARKER
Commissioner

OLIVER J. KELLER
Commissioner

## AFFIDAVIT OF SERVICE BY FACSIMILE

STATE OF ILLINOIS      )
                            ) SS

COUNTY OF COOK      )

        MARY ANNE MARTIN being first duly sworn on oath deposes and says that she

is employed in the Office of the United States Attorney for the Northern District of Illinois; that on

the 22nd day of October 2003, she FAXED a copy of DEPARTMENT OF LABOR'S POSITION

ON PETITION FOR EXEMPTION FROM 29 U.S.C. § 504(a) BAR to:

Peggy A. Hillman
Law Offices of Peggy A. Hillman
445 North Pennsylvania Avenue, Suite 401
Indianapolis, Indiana 46204
Fax #: (317) 637-2369

                   *Mary Anne Martin*

SUBSCRIBED AND SWORN TO before me
this 22nd day of October 2003

                   *Paula M. Gabriel*

NOTARY PUBLIC
My Commission Expires: 1-17-2006

"OFFICIAL SEAL"
Paula M. Gabriel
Notary Public, State of Illinois
My Commission Exp. 01/17/2006